UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THOMAS G. COLDWELL, § | |
| § | |
| Plaintiff, § | |
| § | |
| § | |
| vs. § | CIVIL ACTION H-06-01094 |
| § | |
| § | |
| CITY OF DEER PARK, ET AL., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is a motion for summary judgment filed by the defendants, the City of Deer Park, Joseph Scarafile, Marlon Bryan Magee, Del Wilcoxson, and Justin LeBlanc. For the reasons listed below, the court finds that there is no genuine issue of material fact on any of the plaintiff's claims and that the defendants' motion should be GRANTED.

**I. BACKGROUND**

On February 8, 2004, Officer Scarafile and Officer LeBlanc of the City of Deer Park Police Department responded to a report of an intoxicated subject outside a trailer park located at 4414 Durant St. At the time of the call, the officers were responding to a welfare check at the home of plaintiff's brother, Terry Coldwell. He told the officers that the intoxicated subject was likely his brother, Thomas Coldwell, the plaintiff in this action. *See* Dkt. 20, Ex. 1 ¶ 4.

**A.   Incident at the Trailer Park**

At the scene, plaintiff fled when he saw the officers approaching, but soon thereafter he fell and was apprehended and handcuffed. According to the officers' unchallenged account, Coldwell became increasingly hostile and resisted being placed in custody. *See* Dkt. 20, Ex. 1 ¶ 6. The officers eventually carried Coldwell to the police car after attempting a variety of other techniques

to secure Coldwell's compliance. During this time defendants claim that Coldwell reacted violently by kicking and yelling profanities. Dkt. 20, Ex. 1 ¶ 10, Ex. 4 ¶ 9. Defendants offer evidence that Sergeant Magee, who arrived soon after plaintiff was apprehended, received a laceration on his hand because of Coldwell's struggling. *See* Dkt. 20, Ex. 2 at A. Defendants also allege, and Coldwell does not contest, that Coldwell sustained a cut above his left eye by falling on his face in a voluntary attempt to escape the police car. Dkt. 20, Ex. 1 ¶ 11; Ex. 2 ¶ 8. Officer Scarafile also sprayed Coldwell in the face with pepper spray when he refused to comply. Eventually, Officer Wilcoxson arrived at the scene and was able to coax Coldwell into the police car. Dkt. 20, Ex. 3 ¶ 4.

**B.    Incident at the Police Station**

At the police station the pepper spray was flushed from Coldwell's eyes and the cut on his head was evaluated. Dkt. 20, Ex. 4 ¶ 15. During booking, Coldwell unexpectedly struck Officer Wilcoxson in the head with his fists. *See* Dkt. 20, Ex. 3 at A. Officers Wilcoxson and LeBlanc responded by "grabbing Plaintiff and forcing him to the ground to regain control over and handcuff him." Dkt. 20 at 6; *see also* Dkt. 20, Ex. 3 at A. Defendants do not contest that, in response to Coldwell's attack, "Officer Wilcoxson struck, or attempted to strike, Plaintiff approximately two times in the face or head," and that once they fell to the ground "Officer Wilcoxson struck another two or three blows" to pry Coldwell's hands apart and handcuff him. Dkt. 20 at 6.

## II. ANALYSIS

Defendants argue that the plaintiff has not introduced sufficient evidence to raise a genuine issue of material fact as to his excessive force claims and state-law tort claims and ask the court to render summary judgment in their favor.

2

## A. STATUTORY & CONSTITUTIONAL CLAIMS

Plaintiff brings this suit under 42 U.S.C. §§ 1983 and 1988 against the City of Deer Park and four police officers individually, alleging that, during plaintiff's arrest on February 8, 2004, the named defendants, acting pursuant to local principles and policies, used excessive force in a manner violative of plaintiff's Fifth[1] and Fourteenth Amendment rights.  Dkt. 1 at 24.

Defendants assert that plaintiff cannot support any of his claims as a matter of law and that summary judgment is appropriate.  The plaintiff offers no response to defendants' motion and the time for filing a response has expired.

### 1. Standard of Review

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Upon a defendant's motion for summary judgment, the plaintiff has the burden of producing "specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."  FED. R. CIV. P. 56(e).  Essentially, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Note that "[on] summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

---

[1] Plaintiff claims in his complaint that the police conduct violated his Fifth Amendment right to due process. However, as defendants correctly point out, "[c]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment." Dkt. 20 at 9 (citing *Huang v. Harris County*, No. 00-20806, 264 2001 U.S. App. LEXIS 17485, at *9 (5th Cir. June 22, 2001)).  The Supreme Court also recently affirmed that "a claim of excessive force in the course of making [a] . . . seizure of [a] person . . . [is] properly analyzed under the Fourth Amendment's objective reasonableness standard." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865 (1989)).  For these reasons, plaintiff's Fifth Amendment claim fails as a matter of law.

opposing the motion." *Id.* (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

    *2.  Analysis*

Plaintiff alleges that he has suffered "orbital facial fractures, a broken nose, liver laceration and a fracture to his right hand" as a result of the force used by officers during the arrest and at the police station and brings this suit to recover damages under § 1983 and attorney's fees under § 1988. Dkt. 1 at 23-24; Dkt. 20, Ex. 5.

    a.    <u>Use of force during the arrest</u>

Before turning to the question of qualified immunity the court must first consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If a constitutional right is implicated, the court will next inquire as to whether the right is "clearly established." *Id.* In excessive force claims, a constitutional right is "clearly established" where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Even if it is determined that an officer's conduct violates a constitutional right, he is entitled to qualified immunity if his conduct is objectively reasonable. *See Salas v. Carpenter*, 980 F.2d 299, 305-06 (5th Cir. 1992). Therefore, an officer may still be liable if the plaintiff can show "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. Tex. 2000)). Although this process seems duplicative,[2] the Supreme Court applies two reasonableness tests because "[a]n

---

[2] *See Saucier v. Katz*, 533 U.S. 194, 203, 121 S. Ct. 2151, 2157 (2001) (acknowledging that it may seem "inconsistent to conclude that an officer who acted unreasonably under the constitutional standard nevertheless was entitled to immunity because he 'reasonably acted unreasonably'").

officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances, [and] [i]f the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." *Id.* at 205.

With regard to whether Coldwell's clearly established constitutional rights were violated, a reasonable officer would not consider the officers' conduct in apprehending and subduing Coldwell unlawful under the circumstances. Coldwell does not contest—due to his memory lapse of the night in question[3]—that he ran from the officers, resisted being handcuffed, spit at and kicked the officers, and generally violently resisted arrest. *See* Dkt. 20, Ex. 1 ¶¶ 10-11, Ex. 2 ¶¶ 8-11, Ex. 4 ¶¶ 9-11. Here, given Coldwell's belligerent behavior, no reasonable officer would consider carrying him to the police car and applying pepper spray when he physically obstructed police efforts to place him in the back seat an unlawful use of force. Moreover, plaintiff does not challenge the defendants' assertion that his injuries were sustained as a result of his own voluntary actions, rather than those of the officers. *See* Dkt. 20, Ex. 1 ¶ 11, Ex. 2 ¶ 8. Thus, the plaintiff makes no attempt to show that his injuries "resulted directly . . . from the use of [excessive] force," or that "the force used was objectively unreasonable." *Glenn*, 242 F.3d at 314.

There is no summary judgment evidence to suggest that the officers' conduct was illegal or unreasonable in this case. Coldwell's injuries alone are insufficient to establish a constitutional violation. Without any showing that the officers acted unlawfully or unreasonably under the circumstances, there is no genuine issue of material fact regarding the plaintiff's § 1983 claim against the officers over the use of force during his arrest. Because Coldwell cannot establish that

---

[3] In his deposition, Coldwell admitted that he could not remember anything concerning the circumstances of his arrest and the incident at the police station. *See* Dkt. 20, Ex. 5 at 29-39.

his clearly established constitutional rights were violated, the court need not address the question of qualified immunity.

                b.        <u>Use of force at the police station</u>

"While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (citations omitted). Thus, once the initial seizure is completed, an arrestee becomes a pretrial detainee for constitutional purposes. *See id.*; *Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993). Although courts have disputed the precise moment when "seizure" ends and pretrial detention begins,[4] the Fifth Circuit has consistently held that the Fourteenth Amendment applies "after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time." *Gutierrez*, 139 F.3d at 452 (quoting *Valencia*, 981 F.2d at 1443-44). The Fifth Circuit has also stated that "the Fourth Amendment applies more appropriately to the actual incident of arrest." *See Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir. 1994).

The test for excessive force under the Fourth Amendment is the reasonableness test described above. However, the test for whether treatment of a pretrial detainee violates his Fourteenth Amendment substantive due process guarantee is "whether the measure taken inflicted unnecessary and wanton pain and suffering" and "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Brothers*, 28 F.3d at 456 (quoting *Valencia*, 981 F.2d at 1446).

---

[4] *See Valencia*, 981 F.2d at 1444 n.9 (recognizing that "a number of circuits endorsed the extension of the Fourth Amendment to the period between arrest and charge, or through the period in which an arrestee remains in the arresting officer's custody").

Though Coldwell would not likely be considered a pretrial detainee by Fifth Circuit standards,[5] the court need not decide the Fourth/Fourteenth Amendment constitutional issue in this case because Coldwell's claims fail both standards as a matter of law. The record contains unchallenged video evidence that Coldwell struck officer Wilcoxson in the head during booking. *See* Dkt. 20, Ex. 3 at A & B. The evidence also reflects that the officers' response to Coldwell's attack was both immediate and proportional. The officers, without using weapons, struck Coldwell until he was subdued and placed in restraints on the ground. *See id.* The officers did not use any further force after Coldwell was restrained and immediately called Emergency Medical Services to tend to Coldwell's injuries. *Id.* Coldwell offers no evidence to suggest that the officers applied force "maliciously or sadistically," and, indeed, the evidence suggests the defendants only reacted to Coldwell's unexpected assault. Coldwell also does not contest that the injuries he claims resulted from the episode were caused by his falling to the floor, rather than the officers' use of force. Because there is nothing to suggest that the police response to Coldwell's assault was unreasonable or excessive, there is no genuine issue under the Fourth Amendment's reasonableness standard, and there is nothing to suggest that the force was applied "maliciously or sadistically" in a manner violative of the Fourteenth Amendment's Due Process Clause. Accordingly, plaintiff's constitutional claim arising from the use of force at the police station also fails as a matter of law, and the individual defendants are entitled to judgment as a matter of law on this claim. *See* FED. R. CIV. P. 56(c).

---

[5] Here, though Coldwell was already placed in custody at the time of the booking incident, the second and third factors of the analysis are not satisfied. Coldwell was never released from the custody of Officer Wilcoxson—one of the arresting officers. Additionally, Coldwell had not been "in detention awaiting trial for a significant period of time" before the incident complained of occurred. *Gutierrez*, 139 F.3d at 452; *see also Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 506-508 (W.D. La. 2001) (applying the Fourth Amendment reasonableness test where the plaintiff alleged excessive police force after he had been placed in custody, but before booking).

      c.      Liability of the City of Deer Park

As to the municipality's liability in this case, the Supreme Court has held that "if the [officers] inflicted no constitutional injury, . . . it is inconceivable that the [city] could be liable." *Los Angeles v. Heller*, 475 U.S. 796, 798-99, 106 S. Ct. 1571 (1986). Because Coldwell has not shown that the officers deprived him of a clearly established constitutional right, his claims against the city must fail as a matter of law.

Even assuming that Coldwell's constitutional rights were deprived by the officers' use of force, Deer Park would only be liable if the officers applied force pursuant to the city's official policies or customs that are constitutionally defective. *See Bd. Of the County Comm. of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403-07, 117 S. Ct. 1382 (1997); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir 2002). It is the plaintiff's burden to produce evidence of the city's alleged faulty policies sufficient to put the issue to a jury. *See Pineda*, 291 F.3d at 328 ("Proof of municipal liability . . . requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)."). Though there is evidence that the use of force in this case was done pursuant to official Deer Park police procedures, *see* Dkt. 20, Ex. 6 at A, there is nothing in the record that could lead a reasonable juror to believe these procedures are constitutionally faulty. The plaintiff has also not alleged, or offered any evidence to show, that the officers' training was inadequate. Indeed, the summary judgment evidence suggests otherwise. *See* Dkt. 20, Ex. 2 ¶ 2, Ex. 1 ¶ 2, Ex. 3 ¶ 2, Ex. 4 ¶ 2. Additionally, the plaintiff has not presented any evidence to support a retention theory of liability. Finally, plaintiff has offered no proof that the officers' alleged use of excessive force has become so widespread or persistent such that a defective municipal policy can be inferred.

Because the plaintiff's claims have no factual or evidentiary substance, and because the time for filing a response has passed, the court finds that there is no genuine issue of material fact with regard to plaintiff's constitutional claims arising under § 1983 against the City of Deer Park or the named officers in their individual capacities.[6]

### B.  TEXAS TORT CLAIMS ACT ("TTCA")

Plaintiff argues that the City of Deer Park and the officers should be liable for the injuries he sustained from the officers' use of "tangible personal property of handcuffs before, during and after [p]laintiff's arrest."  Dkt. 1 at 23.

As an initial matter, plaintiff's TTCA claim against the individual officers must be dismissed. Section 101.106(e) of the TTCA expressly states that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  TEX. CIV. PRAC. & REM. CODE § 101.106(e). Because the defendants have so moved, the court dismisses plaintiff's tort claim against the individual officers in accordance with the statute.  The court will next consider the legal sufficiency of plaintiff's TTCA claim against the City of Deer Park.

*1.     Standard of Review*

The Texas Legislature enacted the TTCA to waive sovereign immunity for the State of Texas and its political subdivisions in certain limited circumstances.  *See Holland v. City of Houston*, 41

---

[6] Because the plaintiff's constitutional claims brought under § 1983 fail as a matter of law, he cannot be considered a "prevailing party" as required for any recovery of attorney's fees under 42 U.S.C. § 1988.  *See* 42 U.S.C. § 1988 (In any action or proceeding to enforce a provision of . . . [section 1983] . . . of this title . . . , the court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs." (emphasis added)); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1388 (9th Cir. 1995).  Accordingly, the defendants are also entitled to the entry of summary judgment on plaintiff's claims for attorney's fees pursuant to § 1988.

F. Supp. 2d 678, 710 (S.D. Tex. 1999) (Crone, J.) (citing *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 340, 343 (Tex. 1998)). Section 101.021 of the TTCA gives individual plaintiffs a cause of action against a governmental unit for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

   *2.   Analysis*

Though plaintiff provides little detail as to the nature of his TTCA claim, a theory of liability based on intentional tortious conduct cannot be brought under the statute. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort. . . ."); *see also City of Laredo v. Nuno*, 94 S.W.3d 786, 788-89 (Tex. App.—San Antonio 2002, no pet.) ("[T]he waiver of immunity contained in the [Texas Tort Claims Act] does not extend to claims arising out of intentional torts.").

Further, and relatedly, even had plaintiff styled his state-law claim as a "negligence" action, sovereign immunity would not be waived because his constitutional claims ultimately hinge on intentional conduct. *See, e.g.*, *Gonzales v. City of Corpus Christi*, No. C-05-280, 2005 U.S. Dist. LEXIS 28939, at *11-12 (S.D. Tex. Nov. 9, 2005) (Jack, J.) (holding that, despite plaintiff's claim of alleged misuse of handcuffs and leg irons, "all of plaintiff's damages arise out of the claimed instance of excessive force"); *Harris County v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence."). Because plaintiff cannot maintain his claims under the TTCA, and because the city has not otherwise waived its sovereign immunity, the court finds that there is no genuine issue of material fact with respect to plaintiff's TTCA claim and the City of Deer Park

is accordingly entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).

### III. CONCLUSION

The plaintiff has not adduced evidence sufficient to create a genuine issue of material fact on either his federal statutory and constitutional claims or his state-law tort claims.  The court declines to infer the validity of plaintiff's claims based solely on the fact that he sustained injuries.  Accordingly, the defendants' summary judgment motion is GRANTED.  Plaintiff's federal statutory and constitutional claims and state-law claims under the Texas Tort Claims Act are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on July 9, 2007.

_____
Gray H. Miller
United States District Judge